PEOPLE *v.* WILKINS

CRIMINAL LAW—PHOTOGRAPHIC IDENTIFICATION.
> A conviction based on eyewitness identification at trial follow-
> ing a pretrial identification by photograph will be set aside
> on that ground only if the photographic identification pro-
> cedure was so impermissibly suggestive as to give rise to a
> very substantial likelihood of irreparable misidentification.

Appeal from Recorder's Court of Detroit, John
R. Kirwan, J.   Submitted Division 1 September
7, 1971, at Detroit.  (Docket No. 10288.)   Decided
September 28, 1971.

Garfield Wilkins was convicted of armed robbery.
Defendant appeals.   Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A.
Derengoski,* Solicitor General, *William L. Cahalan,*
Prosecuting Attorney, *Dominick R. Carnovale,*
Chief, Appellate Department, and *Frederick R.
Doetsch, Jr.,* Assistant Prosecuting Attorney, for
the people.

*Armand D. Bove,* for defendant on appeal.

Before: R. B. BURNS, P. J., and J. H. GILLIS and
DANHOF, JJ.

REFERENCES FOR POINTS IN HEADNOTE
21 Am Jur 2d, Criminal Law § 361 *et seq.*
Admissibility of evidence of lineup identification as affected
   by allegedly suggestive lineup procedures.   39 ALR3d 487.

Per Curiam. Defendant was convicted by a jury of armed robbery. MCLA § 750.529 (Stat Ann 1971 Cum Supp § 28.797).

He was arrested the morning of the robbery on a different charge. At the time of his arrest he had complainant's watch in his possession but did not have complainant's ring. He was not armed. Subsequent to his arrest defendant was identified in a photograph by two witnesses as the man who perpetrated the robbery.

Defendant raises two issues on appeal.

1. Was the admission into evidence of photographs shown to the complaining witnesses after the defendant was in custody and without the presence of the defendant or his attorney reversible error?

2. Did the court err in its instructions to the jury by refusing the defendant's requested charge?

There is no merit to defendant's second issue, since the trial court's instruction, when read as a whole, encompassed defendant's requested instruction.

In *United States* v. *Wade* (1967), 388 US 218, 241 (87 S Ct 1926, 1940, 18 L Ed 2d 1149, 1165), the Supreme Court recited certain elements for determining whether or not there was an independent basis for an in-court identification.

"Application of this test in the present context requires consideration of various factors; for example, the prior opportunity to observe the alleged criminal act, the existence of any discrepancy between any pre-lineup description and the defendant's actual description, any identification prior to lineup of another person, *the identification by picture of the defendant prior to the lineup,* failure to identify the defendant on a prior occasion, and the lapse of time

between the alleged act and the lineup identification. It is also relevant to consider those facts which, despite the absence of counsel, are disclosed concerning the conduct of the lineup." (Emphasis supplied.)

Defendant relies heavily on the case of *United States* v. *Zeiler* (CA 3, 1970), 427 F2d 1305, in applying the principle of *Wade* to pretrial photographic identifications. That case is distinguishable from the present case. Defendant Wilkins was not arrested or in custody for the robbery in question nor had counsel been appointed at time of the identification.

The great weight of authority holds that *Wade* and *Gilbert* v. *California* (1967), 388 US 263 (87 S Ct 1951, 18 L Ed 2d 1178) do not apply to photographic identifications. See *Allen* v. *Rhay* (CA 9, 1970), 431 F2d 1160 and cases cited therein.

Mr. Justice Harlan, speaking for the Court in *Simmons* v. *United States* (1968), 390 US 377, 384 (88 S Ct 967, 971; 19 L Ed 2d 1247, 1253) discussed the issue of photographic identification:

"Despite the hazards of initial identification by photograph, this procedure has been used widely and effectively in criminal law enforcement, from the standpoint both of apprehending offenders and of sparing innocent suspects the ignominy of arrest by allowing eyewitnesses to exonerate them through scrutiny of photographs. The danger that use of the technique may result in convictions based on misidentification may be substantially lessened by a course of cross-examination at trial which exposes to the jury the method's potential for error. We are unwilling to prohibit its employment, either in the exercise of our supervisory power or, still less, as a matter of constitutional requirement. Instead, we hold that each case must be considered on its own facts, and that convictions based on eyewitness

identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identfication procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification."

The record here discloses nothing which could be said to be "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification".

Affirmed.